IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2017 Session

## JAMES HEFLIN ET AL. v. IBERIABANK CORPORATION

**Appeal from the Circuit Court for Shelby County**
**No. CT-001537-10     Felicia Corbin Johnson, Judge**

_____

### No. W2016-02414-COA-R3-CV
_____

Plaintiffs, an elderly man and his wife, sued their bank and affiliated entities and others, alleging various theories of liability. The elderly man, upon making two separate withdrawals of a large amount of cash from the bank, was robbed on two separate occasions following the withdrawals. Plaintiffs alleged that the robberies occurred because a bank employee informed her husband of the elderly couple's address and of the large cash withdrawals. The bank filed a motion to dismiss for failure to state a claim upon which relief could be granted, and the trial court granted the motion. We affirm the dismissal of several claims because the Appellants' brief does not comply with the Tennessee Rules of Appellate Procedure. We affirm the dismissal of the remaining claims because Appellants have not stated a claim for which relief may be granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Larry E. Parrish, Memphis, Tennessee, for the appellants, James Heflin, and Janie Heflin.

Todd B. Murrah and Lewis W. Lyons, Memphis, Tennessee, for the appellees, Iberiabank, FSB, Iberiabank Corporation, and Iberia Financial Services, LLC.

Lakesha Thomas and Rodricko Thomas, Appellees.[1]

---

[1]Appellees Lakesha Thomas and Rodricko Thomas did not file a brief or otherwise participate in this appeal.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

This case involves a complaint filed by James and Janie Heflin ("Appellants") against Iberiabank Corporation, Iberiabank, FSB fka Pulaski Bank and Trust Company, Iberiabank Financial Services, LLC ("Appellees"), and Rodricko and Lakesha Thomas,[2] alleging various claims and theories of liability arising out of a series of robberies where the Heflins were victims. Because this appeal arises from the trial court's grant of a motion to dismiss, we take the facts from the Appellants' complaint as true and restate them as follows.

The Heflins were clients of Iberiabank, and the couple had substantial funds on deposit with the bank. On March 14, 2009, Mr. Heflin traveled to a branch of Iberiabank and withdrew $205,478.48 in cash from his account. The teller tendered Mr. Heflin his money in public view of other bank customers and bank employees. On March 25, 2009, Mr. Heflin traveled to another branch of Iberiabank and withdrew an additional $82,928 in cash. On the day of the second withdrawal, Lakesha Thomas, a teller for Iberiabank at the second bank branch, witnessed the elderly Mr. Heflin place the $82,928 in one or more plastic grocery bags. Ms. Thomas then accessed Mr. Heflin's address through the bank's computer, and informed her husband, Rodricko Thomas,[3] that Mr. Heflin had withdrawn a substantial amount of cash from the bank branch. Mr. Heflin was robbed by Mr. Thomas in his driveway of the $82,928 later the same day as the second withdrawal.

Mr. Heflin reported the first robbery to the police, and the police notified Iberiabank. At some point after the first robbery, Ms. Thomas used the bank's computer to learn that Mr. Heflin had earlier withdrawn the $205,478.48 on March 14, 2009, from the other Iberiabank branch. Ms. Thomas also shared this information with Mr. Thomas, and on July 21, 2009, Mr. Thomas robbed the Heflins a second time at their home.

On March 24, 2010, the Heflins filed suit against Iberiabank, Mr. and Ms. Thomas, and others. On December 1, 2010, Appellees filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) and a memorandum of law in support of the motion. On March 23, 2011, Appellants filed a motion opposing Appellees' motion to dismiss. On April 10, 2012, the trial court entered an order granting Iberiabank's motion to dismiss as to all claims. The trial court based its conclusion in part on its

---

[2] On June 10, 2016 the trial court entered a default judgment against Rodricko and Lakesha Thomas, and on October 21, 2016, the trial court entered a $900,000 judgment against them in connection with this case. However, the judgment against the Thomases is not the subject of this appeal.

[3] Mr. and Ms. Thomas were both convicted of criminal charges in connection with these events. However, the aforementioned proceedings are not relevant to this appeal.

finding that Appellants had failed to establish that the bank owed them a duty because the robberies were not foreseeable.[4] On January 15, 2015, Appellants filed a motion "To Rescind Interlocutory Order, Entered April 10, 2012, Granting Motion to Dismiss Claims" against Iberiabank and other named defendants, but the motion was denied. On October 21, 2016, the trial court entered a final order. Appellants timely appealed.

## ISSUES PRESENTED

Although somewhat unclear as written,[5] we observe that Appellants' brief presents the following ten issues for our review:

### Issue One
(Misjudged Forseeability)
Did the trial court commit reversible error by dismissing the Heflin's complaint on the assumption that, for Iberia to be liable to the Heflins, Iberia reasonably would have had to foresee that Iberia's On-Duty Rogue Employee would go rouge as she did?

### Issue Two
(Iberia's Non-Vicarious Direct Tortfeasor Liability)
Did the trial court commit a reversible error by dismissing the Heflins' claims for relief against Iberia even though Tennessee's controlling precedent adjudges Iberia as standing in the shoes of Iberia's On-Duty Rogue Employee (Lakesha Thomas) whose act/ omissions, though not delegated or assigned by Iberia to Iberia's On-Duty Rogue Employee, are the acts/ omissions of Iberia?

### Issue Three
(Iberia's Vicarious Liability: Torts Of Iberia's On-Duty Rogue Employee)
Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a vicarious liability claim against Iberia for all of the tortious acts/omissions of Iberia's On-Duty Rogue Employee (Lakesha Thomas) and other negligent acts/omissions on-duty employees of Iberia participating in the disbursement of the subject cash to Mr. Heflin and the misuse of confidential information held in confidence by Iberia?

### Issue Four
(Non-Vicarious Liability: Breach of Confidence/Confidential Relationship)

---

[4] Specifically, the trial judge stated, "[n]either from my research nor from either party's attorney's research was a case, statute, or regulation found that created a duty for the bank to protect its customers from the criminal acts of third parties."

[5] For example, "Issue Six" purports to relate to "*Vicarious* Negligent Supervision" but specifically states that it is concerned with a *non-vicarious* liability claim. .

Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a non-vicarious liability claim against Iberia for breach of the Heflin's confidence/confidential relationship?

### Issue Five
(Vicarious Liability Breach of Confidence/Confidential Relationship)

Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a vicarious liability claim against Iberia for breach of the Heflin's confidence/confidential relationship?

### Issue Six
(Vicarious Negligent Supervision of Employees, In General)

Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a non-vicarious liability claim against Iberia for breach of Iberia's duty to non-negligently supervise all Iberia employees who were involved with the March 14, 2009 and March 25, 2009 Heflin transactions?

### Issue Seven
(Non-Vicarious Negligent Hiring and Retention of Iberia's On-Duty Rogue Employee)

Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a non-vicarious liability claim against Iberia for breach of Iberia's duty to non-negligently hire and retain Iberia's On-Duty Rogue Employee (Lakesha Thomas)?

### Issue Eight
(Non-Vicarious Negligent Supervision Of Iberia's on Duty-Rogue Employee)

Did the trial court commit reversible error by holding that the Heflins' complaint failed to state a non-vicarious liability claim against Iberia for breach of Iberia's duty to non-negligently supervise Iberia's On-Duty Rogue Employee (Lakesha Thomas)?

### Issue Nine
(No Iberia Vicarious Nor Non-Vicarious Duties) [sic]

Did the trial court commit reversible error by dismissing the Heflins' claims for relief for failure to state a claim holding that Iberia had no vicarious or non-vicarious duties to the Heflins?

### Issue Ten
(Webb Standards)

Did the trial court commit a reversible error by dismissing the claims made by the Heflins without giving the Heflins benefit of the standards of Webb v. Nashville Area Habitat for Humanity, 346 S.W.3d 422 (Tenn. 2011)?

Although it is challenging to discern from the brief presented to us on appeal, we perceive that this appeal requires us to address the following six issues:

1. Did the trial court err in concluding that Iberiabank owed Appellants no duty to prevent the criminal acts of third parties?

2. Did the trial court err in dismissing Appellants' vicarious liability claims against Iberiabank?

3. Did the trial court err in dismissing Appellants' claims based upon Tennessee Code Annotated §45-10-103(1)(A), also known as the Financial Records Privacy Act?

4. Did the trial court err in dismissing Appellants' claims for breach of confidential relationship?

5. Did the trial court err in dismissing Appellants' claims for negligent training and hiring?

6. Did the trial court err in dismissing Appellants' claims for negligent supervision of employees?

**STANDARD OF REVIEW**

The Tennessee Supreme Court laid out the standard of review applicable at the motion to dismiss stage as follows:

> Tennessee Rule of Civil Procedure 8.01 requires that a pleading for relief "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks." Rule 8.05(1) further provides:
>
> > Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged. The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly

- 5 -

identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

When a complaint fails to comply with Rule 8, it is subject to dismissal by grant of a motion to dismiss for failure to state a claim upon which relief can be granted, as provided by Tennessee Rule of Civil Procedure 12.02(6)[.] . . . A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.

In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." We review the trial court's legal conclusions regarding the adequacy of the complaint *de novo*.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 427 (Tenn. 2011) (internal citations and quotation marks omitted).

## DISCUSSION

As a threshold matter, Appellees contend that several issues presented for our review in Appellants' principal brief should be deemed waived because the brief fails to meet the requirements of Tennessee Rule of Appellate Procedure 27. The scope of our review in any case depends, in large part, on the issues the parties have presented to this Court in the manner prescribed by Tennessee Rule of Appellate Procedure 27. *Hodge v. Craig*, 382 S.W.3d 325, 333–34 (Tenn. 2012).

In pertinent part, Tennessee Rule of Appellate Procedure 27 provides as follows:

**(a) Brief of the Appellant.** The brief of the appellant shall contain under appropriate headings and in the order here indicated:

(1) A table of contents, with references to the pages in the brief;

- 6 -

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

(A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27.

Here, the Appellants' brief fails to comply with Rule 27 in several respects. Although some errors are admittedly rather minor, others are more problematic. At the outset, we observe that the basic organizational structure of the brief is noncompliant with the Rule. For example, the sections of Appellants' brief do not actually appear in the order required by Rule 27(a). The "Statement of the Issues" section, for instance, does precede the "Argument" section, but it does not precede the "Statement of the Case" and "Statement of Facts" sections as required. The order of the Rule is simply not followed. Other relatively minor organizational errors are also present in the "Table of Contents" and the "Table of Authorities." First, although the "Table of Contents" does include references to the pages in the brief as required by Rule 27(a)(1), the listed references are incorrect as they concern the pagination for the "Conclusion" section and

the "Certificate of Service." Second, there is not an appropriate heading signaling the beginning of the "Table of Authorities" as contemplated by the Rule.

Although the above errors are arguably somewhat insignificant, unfortunately they are not the only examples of the brief's noncompliance with the appellate rules of procedure. A more fundamental problem exists in relation to the arguments, or lack thereof, connected to Appellants' raised issues. Although the "Statement of the Issues" section of Appellants' brief states that Appellants' attorney attempted to raise ten issues for our review, it is indiscernible to the Court which arguments relate to which issues, or which authorities are purported to be in support of Appellants' position as to each issue. By way of example, Appellants' brief contains subheadings in the "Argument" section labeled as follows: "Corporate Persons;" "Iberia's Knowledge;" "Iberia's Rule of Inquiry Knowledge;" "Iberia's General Corporate Knowledge;" "Operative Person;" "Breach of Confidential Relationship Tort;" "Which Iberia Employees Are Iberia?"; "Foreseeability;" and "Tennessee Notice Pleading Standards." In many instances, this Court is simply unable to discern which arguments in Appellants' brief are in support of which issues as stated in the "Statement of the Issues" section. Moreover, some sections are entirely devoid of any meaningful supporting authority. For example, the "Which Iberia Employees are Iberia?" section of Appellants' brief fails to cite a single case. Another section, the "Foreseeability" section, contains only a single citation, appended in a footnote at the section's conclusion; the citation referenced does not mention "foreseeability." The failure to include appropriate authorities is of concern because, even if we were able to coherently understand what arguments were specifically advanced in support of particular issues identified in the "Statement of the Issues," argument must be supported with citation to authorities. *See* Tenn. R. App. P. 27(a)(7)(A).

Our inability to discern whether Appellants have supported their issues with proper argument is not without significance in light of the directive in Rule 27(a)(7)(A) that the "contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief," be set forth adequately in the argument. If we cannot ascertain that an issue is supported by adequate argument, compliance with the Rule has not been achieved. It must be clear that a party has constructed an argument regarding his or her position on appeal; if not, the matter is subject to waiver. *See Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) ("The failure of a party . . . to construct an argument regarding his position on appeal constitutes waiver of that issue.").

"We will not undertake to search the record and then revise Plaintiff's brief in its entirety so as to create issues of claimed errors by the Trial Court when the Plaintiffs raise no such specific claimed errors because to do so would have this Court serve as Plaintiffs' attorney." *Murray v. Miracle*, 457 S.W.3d 399, 404 (Tenn. Ct. App. 2014). It is simply not the job of an appellate court to attempt to research and construct parties'

arguments. *Coleman v. Coleman*, No. W2011-00585-COA-R3-CV, 2015 WL 479830, at *9 (Tenn. Ct. App. Feb. 4, 2015). Moreover, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Id.* (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

It is the responsibility of the appellant to present a brief in compliance with the appellate rules of procedure, and this no doubt includes the construction of an argument connected to each issue raised, with appropriate supporting authorities and references to the record. Accordingly, as discussed in greater detail below, we agree with Appellees that several of Appellants' claims have been waived because of Appellants' attorney's failure to comply with provisions of the rules of appellate practice, namely the Tennessee Rules of Appellate Procedure.

## 1. NEGLIGENCE OF THE BANK

To prevail on a negligence claim, a plaintiff must establish the following elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *See Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001) (citation omitted). In their complaint, Appellants made several arguments alleging that Iberiabank breached a duty owed to them based on various alleged acts and omissions of Appellees' employees, including Ms. Thomas. For example, Appellants' complaint averred that the bank was negligent in giving Mr. Heflin his money in view of employees and the public; in "distributing such an enormous amount of cash to an elderly gentlemen such as Mr. Heflin without advising him of the protections of FDIC insurance, the danger of possessing such a large amount of cash, and what precautions he should take to protect himself and his assets;" and by allowing its employees to access customer records, including addresses. The trial court granted the Appellees' motion to dismiss, in part, because the trial court concluded that the Heflins had failed to establish that the bank owed them a duty to prevent the criminal acts of Mr. Thomas.

We will not address the merits of the trial court's dismissal of Appellants' direct liability claims, because of profound deficiencies with Appellants' brief. The "Statement of the Issues" section of Appellants' brief contains several issues, which appear to relate to the "duty" element of a negligence claim. However, the "Argument" section contains no corresponding "issue" headings, resulting in a brief which was challenging for the Court to attempt to follow. For example, the first section of the argument of Appellants' brief is entitled "Corporate Persons." The section does not indicate which issue the "Corporate Persons" section is intended to address. Appellants' attorney cites several cases in this section; however, the authority relates primarily to the issue of punitive damages. Punitive damages are not at issue in this appeal. Indeed, Appellants' brief **fails to contain a single case helpful to the analysis of the duty element of Appellants' negligence claims** against Iberiabank. As we previously stated, the section labeled "Foreseeability," a section where one would expect to find a discussion of duty, lacks any

citation to relevant supporting authority. "The Appellant's Brief 'should contain an argument setting forth the contentions of the appellant with respect to the issues presented with citations to the authorities and appropriate references to the record.'" *See Kohler Co.*, 222 S.W.3d at 400 (quoting *Rhea Cty. v. Town of Graysville*, No. E2001–02313–COA–R3–CV, 2002 WL 1723681, at *7 (Tenn. Ct. App. July 25, 2002)).

We conclude that Appellants have waived their negligence claims by failing to cite to any authority addressing the trial court's conclusion that Appellants' failed to establish that the bank owed them a duty to prevent the criminal acts of third parties.

## 2. RESPONDEAT SUPERIOR

Under the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by its employee within the course and scope of his or her employment. *See Washington v. 822 Corp.*, 43 S.W.3d 491, 494 (Tenn. Ct. App. 2000) (citing *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992)). To hold a principal liable for the acts of another, a plaintiff must prove the following elements: "(1) that the person causing the injury was the principal's agent and (2) that the person causing the injury was acting on the principal's business and acting within the scope of his or her employment when the injury occurred." *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 120 (Tenn. 2005).

As we have alluded to before, we are unable to definitively discern whether Appellant has appealed the dismissal of Appellants' claims based on respondeat superior. Appellants' brief appears to advance a legal theory in support of Appellants' claims akin to strict liability, rather than respondeat superior. For example, Appellants' brief states, "[t]here is an indivisibility that keeps the employees' criminal conduct from being seen as conduct different from the corporation's conduct." This is simply incorrect.

In this case, the predicate acts for imposing vicarious liability were clearly criminal in nature, and not within the scope of Ms. Thomas' employment. It is not the responsibility of this Court to provide legal authority supporting Appellants' position on this point, and we conclude that, without supporting legal authority for their position, Appellants' claims based upon respondeat superior have been waived.

## 3. TENNESSEE CODE ANNOTATED § 45-10-103(1)(A)

The Heflins claim that the trial court erred in concluding that they failed to state a claim for relief under Tennessee Code Annotated § 45-10-103(1)(A), also known as the Financial Records Privacy Act. Tenn. Code Ann. § 45-10-101. In support of their claim, the Heflins alleged in their complaint that Ms. Thomas used the bank's computer to learn

that Mr. Heflin had withdrawn a large amount of cash on March 14, 2009, and accessed Mr. Heflin's address.

The Financial Records Privacy Act makes it illegal for a financial institution to disclose "financial records" of a customer to any person other than the customer or the customer's agent.[6] Tenn. Code Ann. § 45-10-104. However, the statute provides that an employee of the bank is entitled to access information protected by the act. Tenn. Code Ann. § 45-10-103(1)(A).

Because Ms. Thomas was an employee of the bank when she accessed the records, we affirm the trial court's dismissal of this claim.

### 4. BREACH OF CONFIDENTIAL RELATIONSHIP

The Heflins claim that the trial court erred in concluding that they had failed to state a claim for breach of confidential relationship. In their brief, Appellants essentially assert that the bank is strictly liable for the "tort" of allowing Ms. Thomas to access their home address and account information.

Tennessee has long recognized a cause of action for breach of confidential relationship. *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 410 (Tenn. 2002). A confidential relationship is one in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence to influence and exercise dominion and control over the weaker or dominated party." *Id.* (quoting *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989)). The elements of a claim for breach of confidential relationship are: "(1) the defendant was in a position to influence or control the plaintiff; (2) the defendant used the confidences given to him or her to obtain some benefit from, or advantage over, the plaintiff; and (3) the plaintiff, as the dominated party in the relationship, suffered some detriment at the hands of the defendant." *Id.* (citation omitted); *see also Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977) (stating that "there must be a showing that there were present the elements of dominion and control by the stronger over the weaker").

In reviewing the complaint in this case, we conclude that the Heflins have not stated a claim for breach of confidential relationship by Iberiabank. The Heflins have not alleged that the bank used the trust or confidences given to it either to obtain an advantage over them or to extract some benefit from the couple. Iberiabank obtained no benefit from having its employee provide Appellants' address to Mr. Thomas so that Mr.

---

[6] "Financial records" is statutorily defined as, "any original document, any copy of an original document, or any information contained in the document, other than the customer's name, address, and account number[.]" Tenn. Code Ann. § 45-10-102.

Thomas could rob Mr. Heflin. We affirm the judgment of the trial court's dismissal of this claim.

## 5. NEGLIGENT HIRING OF MS. THOMAS AND/OR BANK EMPLOYEES

Tennessee recognizes a claim for the negligent hiring and training of employees. *See, e.g.*, *Marshalls of Nashville, Tenn., Inc. v. Harding Mall Assocs. Ltd.*, 799 S.W.2d 239, 243 (Tenn. Ct. App. 1990). "A plaintiff in Tennessee may recover for negligent hiring, supervision, or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *See Bazemore v. Performance Food Grp.*, 478 S.W.3d 628, 638–39 (Tenn. Ct. App. 2015) (citing *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008)).

Once again, we are unable to discern definitively which authorities Appellants' brief avers support Appellants' claim for the negligent hiring of Ms. Thomas and the other bank's employees. However, it is clear that the complaint did not aver sufficient facts to support a claim for negligent hiring of Ms. Thomas and other bank employees. The complaint does not allege that Ms. Thomas had a criminal history or record of misbehavior that would have disqualified her from being hired as a bank teller. Accordingly, we affirm the trial court's dismissal of this claim.

## 6. NEGLIGENT SUPERVISION AND RETENTION OF EMPLOYEES

Tennessee recognizes a tort for negligent supervision of employees. *See Gordon v. Tractor Supply Co.*, No. M2015–01049–COA–R3–CV, 2016 WL 3349024 (Tenn. Ct. App. June 8, 2016). Again, we are unable to discern what arguments in Appellants' brief support this claim. The Court has done its best to untangle the arguments and authorities in Appellants' brief, and we are simply unable to do so. Our review of Appellants' brief indicates that Appellants failed to cite a single case relevant to this claim and we, therefore, consider any claim for negligent supervision of employees waived.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed with costs of the appeal assessed against the Appellants, James and Janie Heflin, and their surety, for all of which execution may issue, if necessary.

ARNOLD B. GOLDIN, JUDGE